In re Estate of Edward E. Allen, Deceased.
Claim of Edward E. Allen Manufacturing Company, Appellant, v. Louis A. Heile, Executor of Will of Edward E. Allen, Deceased, Appellee.

Gen. No. 43,203.

Heard in the second division of this court for the first district at the October term, 1944.

Opinion filed December 18, 1945. Released for publication January 2, 1946.

FREEMAN & FREEMAN, of Chicago, for appellant; EARL FREEMAN, of Chicago, of counsel.

LOUIS A. HEILE and ROBERT E. TURNEY, both of Chicago, for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Edward E. Allen Manufacturing Company (hereinafter referred to as claimant) appeals from an order of the circuit court disallowing its claim for $550.09 against the estate of Edward E. Allen, deceased (hereinafter referred to as defendant).

There is substantially no dispute as to the salient facts. Allen, the deceased, was employed by the claimant corporation, and as owner of the premises on which its factory was located, received a monthly rental of $225. For some reason not disclosed of record, the corporation had employed the practice of prepaying its rent to Allen. At the close of 1937 prepayments to Allen exceeded $1,400, and on December 30 of that year he executed a note for $1,498.19, payable to claimant at the rate of $50 per month until November 1938, when the remaining balance was to become due and payable. Up to November 30, 1941 Allen paid $400 on account of the indebtedness, leaving a balance of $1,098.19. Claimant kept Allen's account in a so-called ''Prepaid Rent'' account. On November

30, 1941 it charged off in an entry on its journal the unpaid balance of $1,098.19, pursuant to Allen's instructions. The journal entry appears as follows:

"Reserve Bad Debts $1,098.19
   Note Rec. E. E. Allen           $1,098.19
To charge off remainder of
note as per instructions
of Mr. Allen."

Allen died November 11, 1942, and on November 30 of that year claimant, pursuant to instructions of its board of directors, reversed the foregoing entry by inserting another entry in its journal, which appears as follows:

"Prepaid Rent $1,098.19
   P & L Misc. Inc.           $1,098.19
To reverse entry Nov. 30, 1941 whereby
note of Edw. E. Allen was charged to
reserve. Reversal made on instructions
of Directors Kohl, Olson, Pomazal &
Vanderworth."

The "Prepaid Rent" account showed that on December 1, 1942 Allen owed claimant $1,450.09, which included the item of $1,098.19. After the premises were sold in March 1943 claimant credited Allen's account with the sum of $900 as rent due for December 1942 and January, February and March 1943, leaving a balance of $550.09, the amount for which the claim was filed.

Upon trial of the cause defendant offered no evidence whatever, and the only item disputed by the estate was that of $1,098.19, which had been charged off claimant's books as a bad debt.

The fundamental question presented is whether Allen was indebted to the corporation in the amount claimed. The books of account indicate that he was, and there is no denial of that fact. In seeking to sustain the order dismissing the claim defendant takes the position that the indebtedness of the deceased having

been charged off as a bad debt, the directors of the claimant corporation had no right to reinstate it on the books of the company after Allen died. Defendant cites no authority and we know of none which would support this contention. It being admitted that Allen was indebted to the corporation in the amount claimed, the book entry was simply one method of proving the indebtedness; it might have been shown by other competent evidence. The plain fact is that Allen owed the claimant corporation $550.09, and there is no suggestion that that sum was ever paid. Simply because it was carried in a reserve account for bad debts, is no indication that the indebtedness was extinguished. Even if the reversal of the entry of November 30, 1941 had not been noted on the books, the indebtedness would still have existed; a bad debt is a bad debt; it is not a paid or discharged debt.

In ordinary business practice, when a customer does not pay his bill and there appears to be no means of collecting it, it is entered as a bad debt. Such accounting procedure is simply a method of evaluating an asset and does not in the slightest manner affect the force or validity of the obligation. If later the debt becomes collectible, there is nothing to prevent its enforcement. Let us suppose a case where Jones owes Brown $100 and then disappears. Brown may enter that on his books as a bad debt. Such an entry does not discharge the debt because if Jones returns, Brown can sue to enforce the obligation. Or suppose Brown's books showed that Jones' debt had been paid, when in fact it had not. The bookkeeping entry would not discharge the debt if, in fact, it still existed. We think these observations lead to the conclusion that book entries are not conclusive evidence of an indebtedness, but are merely one means of showing the account of the parties. In the case at bar the existence of the debt up to November 30, 1941, the date it was charged off claimant's books, was never denied by

defendant, nor was there any attempt to show payment subsequent thereto. As a matter of fact the $550.09 balance for which the claim was filed was never paid by Allen or his estate, and no one contends that it was.

Accordingly we think the court was in error in denying the claim. The order of the circuit court is therefore reversed and the cause remanded with directions that the claim be allowed.

*Order reversed and cause remanded with directions that claim be allowed.*

SCANLAN and SULLIVAN, JJ., concur.